UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| SHARON EIDSON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. |
| | )   4:19-cv-00459-KOB |
| ALBERTVILLE AUTO | ) |
| ACQUISITIONS, INC., et al., | ) |
| | ) |
|     Defendants. | |

## MEMORANDUM OPINION

This matter, which the court ordered to arbitration in 2019, now comes before the court on Defendants' motion to dismiss for lack of prosecution. (Doc. 39). The action stems from Ms. Eidson's purchase of a vehicle from Defendants in March 2019, which Defendants allegedly induced her to make through "predatory practices . . . targeting lower-income borrowers and taking advantage of those without meaningful access to credit." (Doc. 21 at 1-2). On November 25, 2019, the court granted Defendants' motion to compel arbitration, rejecting Plaintiff's arguments that the arbitration agreement she signed when purchasing the vehicle was unenforceable on grounds of fraud and unconscionability. (Doc. 34).

Nearly two-and-a-half years later, Defendants brought this motion to dismiss, arguing that Plaintiff "has failed to prosecute this action under Rule 41(b) of the Federal Rules of Civil Procedure" by failing to pursue arbitration as ordered.

1

(Doc. 39 at 9). Because Plaintiff and Defendants share the blame for the lack of progress in the arbitral forum and Plaintiff's conduct in particular does not rise to the level of willful contempt, the court will deny Defendants' motion.

**I.     Facts**

The facts underlying Plaintiff's complaint are summarized in the court's Memorandum Opinion granting Defendants' motion to compel arbitration. *See* (doc. 34 at 2). Relevant here are events that transpired following the court's November 25, 2019 Order accompanying that Memorandum Opinion.

   A.     November 2019 to August 2020

Shortly after the court's ruling, Defendants' counsel, Jeff Ingram, emailed Plaintiff's counsel, Jason Yearout, on December 9, 2019, asking whether Plaintiff had "any interest in trying to resolve this before initiating arbitration." After a delay of a little over a month (attributed to "the holidays and a busy December"), Mr. Yearout responded on January 6, 2020 that he would talk to his client that week; after another month and a follow-up email from Mr. Ingram, Mr. Yearout confirmed on February 6, 2020 that Plaintiff would make a settlement demand. Mr. Yearout sent a demand to Mr. Ingram less than two weeks later on February 17. (Doc. 41-1 at 4-9).

After an initial response the next day with his own reaction and a disclaimer that he would "run it by my people," Mr. Ingram did not respond further for over a

month. Mr. Yearout eventually sent a follow-up email on March 23, asking whether Defendants had a response to the settlement demand or if he should file the arbitration. Mr. Ingram responded the next day (March 24) that his clients' "attention has been elsewhere" due to the COVID-19 pandemic but that he would "try to get you something as soon as possible." In light of this response, Mr. Yearout wrote back:

> Thanks, for the time being, especially with COVID-19, we will await a response . . . In other words, we will wait for some clarity on the pandemic and a response prior to filing anything in arbitration. If you disagree (object) with any of the above, please let me know and we can at least file the arbitration as a placeholder.

Mr. Ingram replied, "That is fine with me." (Doc. 41-1 at 1-3).

Other than a request for the loan's current balance on April 2, 2020, which Mr. Yearout answered that same day, nothing in the record indicates that defense counsel responded to Plaintiff's settlement demand for over four months. Then, on August 6, 2020, Mr. Yearout requested a call, and Mr. Ingram advised of his availability the next day. (Doc. 41-2). Evidently no significant progress was made in any settlement discussions that may have ensued, as Mr. Yearout filed the arbitration case with the Better Business Bureau ("BBB") three months later on November 18, 2020. (Doc. 41-4).

B.      November 2020 to Filing of the Instant Motion

The record presented to the court shows periods of inactivity interspersed with periods of moderate activity. For example, from the filing of the arbitration in November 2020 until January 2021, nothing occurred. Eventually the BBB apparently requested additional forms from Plaintiff's counsel, who re-filed the arbitration with the additional paperwork on January 28 (Doc. 41-5). Defendants answered the complaint in late February (Doc. 39-3) and both parties communicated with the BBB through mid-March, *see* (docs. 41-6, 39-4). The matter stalled, however, after Mr. Yearout learned in a March 15-16 email exchange with the BBB that its arbitration process did not include discovery except by mutual agreement of the parties. *See* (doc. 41-7). From that mid-March email correspondence until October, the record shows no action by Plaintiff's counsel.

Mr. Yearout finally contacted Mr. Ingram on October 6, 2021, leaving a voicemail that led to further discussions, including further discussions of the possibility of settlement. *See* (doc. 41-9; doc. 41 at 4). Approximately a month later on November 10, Mr. Yearout proposed via email that the parties arrange for "some limited discovery for rogs, rfps, and a few deps" in order to "get this on track for a summer 2022 arbitration." (Doc. 39-6). The record does not include a response from Mr. Ingram. When Mr. Yearout renewed his request approximately three months later on February 3, 2022, Mr. Ingram declined the request, noting

that BBB rules did not mandate discovery. (Doc. 39-7). The parties then filed the joint status report that brought to the court's attention the lack of progress in the arbitration proceeding. (Doc. 37).

## II.     Legal Standard

The basis for a motion to dismiss for failure to prosecute is Federal Rule of Civil Procedure 41(b), which provides: "If the Plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." The Eleventh Circuit has stated that dismissal with prejudice under Rule 41(b) "is proper only 'where there is a clear record of "willful" contempt and an implicit or explicit finding that lesser sanctions would not suffice.'" *Powell v. Siegal*, 447 Fed. Appx. 92, 93 (11th Cir. 2011) (per curiam) (quoting *Gratton v. Great Am. Commc'ns*, 178 F. 3d 1373, 1374 (11th Cir. 1999)). "Violations 'caused by simple negligence, misunderstanding, or inability to comply' do not constitute 'willfulness.'" *Powell*, 447 Fed. Appx. at 93 (quoting *In re Se. Banking Corp.*, 204 F.3d 1322, 1332 (11th Cir. 2000)).

Dismissal under Rule 41(b) is a "sanction of last resort that is to be utilized only in extreme situations." *Morewitz v. West of England Ship Owners' Mut. Prot. & Indem. Ass'n (Luxembourg)*, 62 F.3d 1356, 1366 (11th Cir. 1995). "Moreover, the harsh sanction of dismissal with prejudice is thought to be more appropriate in a case where a party, as distinct from counsel, is culpable." *Betty K Agencies, Ltd.*

*v. M/V Monada*, 432 F.3d 1333, 1338 (11th Cir. 2005) (citing *Gratton*, 178 F.3d at 1375).

### III. Analysis

The court's first task is to determine the extent to which each party is responsible for the lethargic pace with which this matter has proceeded in arbitration. It must then decide whether Plaintiff's portion of the blame is fairly characterized as demonstrating "willful contempt" that justifies dismissal under Rule 41(b).

As a threshold matter, while Defendants complain of nearly a year's delay from the court's November 25, 2019 Order compelling arbitration until Plaintiff filed her arbitration on November 18, 2020, that delay is largely attributable to settlement negotiations that Defendants explicitly agreed should precede the filing of the arbitration. Not only did Mr. Ingram's initial inquiry to Plaintiff's counsel regarding interest in settlement talks ask about interest in "resolving this *before initiating arbitration*" (doc 41-1 at 9) (emphasis added), but Mr. Ingram also later expressly agreed to Mr. Yearout's proposal that he would "wait for some clarity on the pandemic and a response [from Defendants] prior to filing anything in arbitration" (doc. 41-1 at 1).

Having agreed to the former arrangement and declined Mr. Yearout's alternative offer to "file the arbitration as a placeholder" if Mr. Ingram objected to

his proposal, Defendants demonstrate considerable *chutzpah* by complaining that Plaintiff delayed filing her arbitration case. Moreover, the gap between this court's arbitration Order and Plaintiff's filing of the arbitration case includes more than four months of silence by Defendants (from April 2 to August 6, 2020) with the proverbial ball in their court to respond to Plaintiff's settlement demand. (Doc. 41-2 at 1-3).

Turning to the sequence of events following Plaintiff's filing of the arbitration with the BBB, the court finds some dilatory conduct on the part of Plaintiff's counsel, but none that rises to the level of "willful contempt" required by Eleventh Circuit precedent. *See Gratton*, 178 F.3d at 174. Nor does the record indicate that any of the fault for that delay lies with Ms. Eidson herself as distinct from her counsel, a fact that further militates against imposing the "harsh sanction of dismissal with prejudice" under Rule 41(b). *See Betty K Agencies*, 432 F.3d at 1338.

Most troubling to the court is the 11-month period from March 2021 (when the BBB informed Mr. Yearout that the arbitration process would not involve any discovery except what counsel arrange between themselves) to February 2022 (when plaintiff's counsel proposed the drafting of a discovery schedule to defense counsel). During that time, plaintiff's counsel took little meaningful action to advance the case. Still, even during this period, Mr. Yearout (and in one instance

one of his colleagues) made some modest efforts to move the case forward despite a lack of familiarity with the BBB arbitration process.[1]

Initially, the court notes that in the March 2021 email exchange with the BBB, plaintiff's counsel asked: "Is there anything we need to do at this point being that the other attorney has not been contacted/or responded?" (Doc. 41-6 at 1). The BBB representative responded that she had sent defense counsel "another email urging him to give me his documents" and attached some explanatory materials but did not advise plaintiff's counsel of any steps to be taken or any future deadlines. (*Id*.). While this exchange does not wholly absolve Plaintiff's counsel of fault for approximately 7 months of subsequent inaction, it argues in favor of deeming that delay to be the result of "negligence" rather than "willful contempt."

The record indicates that Plaintiff's counsel undertook greater efforts to move the case along in the fall of 2021. First, Mr. Yearout reached out to defense counsel by phone in October, leading to further settlement discussions. (Doc. 41-9; Doc. 41 at 4). Second, Mr. Yearout twice contacted defense counsel with requests to negotiate a discovery schedule—first in November 2021 and again in February 2022. (Doc. 39-6; Doc. 41-12 at 3). Mr. Ingram did not respond to the first request and declined the second.

---

[1] Mr. Yearout wrote to a representative of the BBB in a March 16, 2021 email that his "main impediment at the moment is that I have never done a BBB arbitration." (Doc. 41-7 at 1). The court appreciates Mr. Yearout's candor.

To be sure, the court expects a substantially greater degree of diligence on the part of counsel so that matters move forward expeditiously. Nevertheless, given (1) Mr. Yearout's attempts to negotiate a discovery schedule prior to committing to an arbitration date, and (2) the absence of any deadline from the BBB for counsel to propose arbitration dates or rank arbitrators, the court believes Mr. Yearout's delay in these matters is better characterized as "simple negligence" rather than "willfulness."

## IV.   Conclusion

Because negligence provides insufficient grounds for the extreme sanction of dismissal with prejudice, the court will DENY Defendants' motion to dismiss. The court does, however, admonish Plaintiff's counsel to move forward expeditiously with the arbitration and notes that it will not view continued delay favorably in considering any future motions for dismissal on similar grounds. To ensure that neither party creates further undue delay, the court will also order the parties to submit a joint status report no later than October 10, 2022 and every 60 days thereafter until the arbitration has been completed.

**DONE** and **ORDERED** this 10th day of August, 2022.

_____
**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE